## Commonwealth ex rel. Scripko v. Bodenstein et al.

*Louis G. Feldmann* and *Frederic R. Gallagher,* for relator.

*J. Mitchell Jenkins, Assistant District Attorney,* for Commonwealth.

PINOLA, J., October 3, 1951.—Relator, William Scripko, who seeks to be discharged through these proceedings, voluntarily surrendered to the District Attorney of Luzerne County when he learned that the Governor had issued a warrant for his arrest on the charge of nonsupport at the request of the Governor of the State of New Jersey.

In the indictment attached to the warrant, relator is charged with having, on April 1, 1950, at the Town

of Phillipsburg, in the County of Warren, deserted and wilfully neglected and refused to support his wife, Barbara Scripko. It was filed in the clerk's office at Belvidere, N. J., on January 19, 1951.

He contends that after that date he paid in full for the support of his wife up to June 8, 1950, and therefore he could not be legally indicted for an alleged offense in April 1950.

At the hearing, Fred Bodenstein, detective of the New Jersey State Police, the agent of the demanding State, testified that Petitioner's exhibit no. 1 was a copy of the record in the case against relator.

The entry of June 8th in the record reads as follows:

"Court revoked condition under which William Scripko may purge himself and ordered defendant to pay balance in arrears of $123.50, paying $15 per week to his wife Barbara Scripko and agreeing to waiver of extradition from any state signatory to interstate compact of N. J. respecting desertion and nonsupport  Payments begin week beginning Monday morning, June 12, 1950."

Relator has produced the check given by his counsel in payment of the entire sum of $123.50. It is dated June 8, 1950, is endorsed by Barbara E. Scripko, his wife, and was canceled by the paying bank on June 13, 1950.

Section 5 of the Uniform Support Law, of May 10, 1951, P. L. 279, governs criminal enforcement. Inter alia, it provides:

"The provisions for extradition of criminals, not inconsistent herewith, shall apply to any such demand, . . ."

Section 10 of the Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, 19 PS §191.10, specifically provides that the prisoner, whose extradition is sought, shall have the right to apply for a writ of habeas corpus.

As Keller, P. J., declared in Com. ex rel. v. Supt. of County Prison, 152 Pa. Superior Ct. 167, 172:

"Unlike the provisions of Section 2 of the Act of May 24, 1878, P. L. 137, as amended by the Act of June 4, 1879, P. L. 95, both of which were repealed by Act of April 21, 1927, P. L. 327, the Act of 1941 does not limit the investigation and hearing under the writ of habeas corpus to the question of identification."

Moreover, under the Act of July 1, 1937, P. L. 2664, 12 PS §1892, the judge granting the writ of habeas corpus "may inquire and examine into the facts of the case."

Section 2 of that act 12 PS §1893, specifically directs that:

". . . if such proceedings shall, after inquiry, be deemed to have been conducted not in accordance with law, or the evidence deemed insufficient, the prisoner shall be discharged."

Under Section 3 of that act, 12 PS §1894, "the records of all proceedings and testimony shall be available to the petitioner or his counsel for inspection in the court where the application is made, regardless of where the proceedings against the person detained are pending."

No doubt it was in compliance with this provision that the District Attorney of Warren County furnished to his agent petitioner's exhibit no. 1.

When relator paid the sum of $123.50, the balance of his arrearage, he had complied with the order for support up to June 8, 1950, and, therefore, he could not be indicted on January 19, 1951, for nonsupport on April 1, 1950. Such proceedings are absolutely irregular.

Accordingly, now October 3, 1951, relator is discharged.